## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

FLORIDA HEALTH SCIENCES
CENTER, INC., NORTH BROWARD
HOSPITAL DISTRICT, HALIFAX
HOSPITAL MEDICAL CENTER,
BAYFRONT HMA MEDICAL CENTER,
LLC, CGH HOSPITAL, LTD., CITRUS
HMA, LLC, CENTRAL FLORIDA
HEALTH, CRESTVIEW HOSPITAL
CORPORATION, DELRAY MEDICAL
CENTER, INC., FLAGLER HOSPITAL,
INC., GOOD SAMARITAN MEDICAL
CENTER, INC., HAINES CITY HMA,
LLC, HERNANDO HMA, LLC,
HIALEAH HOSPITAL, INC., HMA
SANTA ROSA MEDICAL CENTER,
LLC, KEY WEST HMA, LLC, LAKE
SHORE HMA, LLC, LAKE WALES
HOSPITAL CORPORATION,
LARKIN COMMUNITY HOSPITAL
PALM SPRINGS CAMPUS, LLC,
LARKIN COMMUNITY HOSPITAL,
INC., LARKIN COMMUNITY
HOSPITAL BEHAVIORAL
SERVICE, INC., LEESBURG
REGIONAL MEDICAL CENTER, INC.,
LIFEMARK HOSPITALS OF FLORIDA,
INC., LIVE OAK HMA, LLC, NAPLES
HMA, LLC, NORTH SHORE MEDICAL
CENTER, INC., OSCEOLASC LLC,
PALM BEACH GARDENS
COMMUNITY HOSPITAL, INC.,
PORT CHARLOTTE HMA, LLC, PUNTA
GORDA HMA, LLC, ST. MARY'S
MEDICAL CENTER, INC., STARKE
HMA, LLC, THE VILLAGES TRI-
COUNTY MEDICAL CENTER, INC.,
and VENICE HMA, LLC,

Plaintiffs,

Civil Action No. _____


(Formerly Case No. CACE-19-018882,
17th Judicial Circuit, Broward County,
Florida)

v.

RICHARD SACKLER; BEVERLY
SACKLER; DAVID SACKLER; ILENE
SACKLER LEFCOURT; JONATHAN
SACKLER; KATHE SACKLER;
MORTIMER D.A. SACKLER; THERESA
SACKLER; JOHN STEWART; MARK
TIMNEY; CRAIG LANDAU; RUSSELL
GASDIA; BARBARA C. MILLER,
BRIANN PARSON-BARNES, BECCA
BECK HARVILLE, LINDSEY
BONIFACIO, TAMMY HEYWARD,
JAMES SPEED, DAMON STORHOFF,
DIANA C. MULLER, DRAUPADI
DALEY; AMNEAL
PHARMACEUTICALS, LLC; AMNEAL
PHARMACEUTICALS, INC.; TEVA
PHARMACEUTICAL INDUSTRIES,
LTD.; TEVA PHARMACEUTICALS USA,
INC.; CEPHALON, INC.; JOHNSON &
JOHNSON; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-
MCNEIL-JANSSEN
PHARMACEUTICALS, INC. n/k/a
JANSSEN PHARMACEUTICALS, INC.,
JANSSEN PHARMACEUTICA, INC.
n/k/a JANSSEN PHARMACEUTICALS,
INC.; ABBOTT LABORATORIES;
ABBOTT LABORATORIES, INC.;
ASSERTIO THERAPEUTICS, INC.;
ENDO HEALTH SOLUTIONS, INC.;
ENDO PHARMACEUTICALS, INC.;
PAR PHARMACEUTICAL, INC.; PAR
PHARMACEUTICALS COMPANIES,
INC.; MALLINCKRODT, LLC;
MALLINCKRODT PLC; SPECGX, LLC;
ALLERGAN PLC; ALLERGAN
FINANCE, LLC; ALLERGAN SALES,
LLC; ALLERGAN USA, INC.; WATSON
LABORATORIES, INC.; ACTAVIS LLC;
ACTAVIS PHARMA, INC.; ANDA, INC.;
H.D. SMITH, LLC f/k/a H.D. SMITH
WHOLESALE DRUG CO.; HENRY
SCHEIN, INC.;
AMERISOURCEBERGEN DRUG

2

CORPORATION; CARDINAL HEALTH,
INC.; THE KROGER CO.; KROGER
LIMITED PARTNERSHIP II; CVS
HEALTH CORPORATION; CVS
PHARMACY, INC.; CVS INDIANA,
L.L.C.; WALMART INC.; WAL-MART
STORES EAST, LP; NORAMCO, INC.;
WALGREEN CO., and WALGREEN
EASTERN CO., INC.,

                      Defendants.

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant CVS Pharmacy, Inc. ("CVS") has removed the above-captioned action from the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida to the United States District Court for the Southern District of Florida. As grounds for removal, CVS states:

## I.    Nature of Removed Action

1.    On September 16, 2019, Florida Health Sciences Center, Inc.; North Broward Hospital District; Halifax Hospital Medical Center, Bayfront HMA Medical Center, LLC, CGH Hospital, Ltd.; Citrus HMA, LLC; Central Florida Health; Crestview Hospital Corporation; Delray Medical Center, Inc.; Flagler Hospital, Inc.; Good Samaritan Medical Center, Inc.; Haines City HMA, LLC; Hernando HMA, LLC; Hialeah Hospital, Inc.; HMA Santa Rosa Medical Center, LLC; Key West HMA, LLC; Lake Shore HMA, LLC; Lake Wales Hospital Corporation; Larkin Community Hospital Palm Springs Campus, LLC; Larkin Community Hospital, Inc.; Larkin Community Hospital Behavioral Service, Inc.;

Leesburg Regional Medical Center, Inc.; Lifemark Hospitals Of Florida, Inc.; Live Oak HMA, LLC; Naples HMA, LLC; North Shore Medical Center, Inc.; Osceolasc LLC; Palm Beach Gardens Community Hospital, Inc.; Port Charlotte HMA, LLC; Punta Gorda HMA, LLC; St. Mary's Medical Center, Inc.; Starke HMA, LLC; The Villages Tri-County Medical Center, Inc.; and Venice HMA, LLC (collectively "Plaintiffs") filed *Florida Health Sciences, Inc. et al.* v. *Richard Sackler, et al.* in the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida. The court assigned the action Case No. CACE-19-018882.

2.     The Complaint asserts claims against three groups of Defendants.

3.     The first group of Defendants consists of Richard Sackler; Beverly Sackler; David Sackler; Ilene Sackler Lefcourt; Jonathan Sackler; Kathe Sackler; Mortimer D.A. Sackler; Theresa Sackler; John Stewart; Mark Timney; Craig Landau; Russell Gasdia; Barbara C. Miller, Briann Parson-Barnes, Becca Beck Harville, Lindsey Bonifacio, Tammy Heyward, James Speed, Damon Storhoff, Diana C. Muller, Draupadi Daley; Amneal Pharmaceuticals, LLC; Amneal Pharmaceuticals, Inc.; Teva Pharmaceutical Industries Ltd. (incorrectly named "Teva Pharmaceuticals Industries, Ltd." in the Complaint); Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Assertio Therapeutics, Inc.; Endo Health Solutions, Inc.; Endo Pharmaceuticals, Inc.; Par Pharmaceutical, Inc.; Par

4

Pharmaceuticals Companies, Inc.; Mallinckrodt, LLC; Mallinckrodt Plc; SpecGx, LLC; Allergan plc; Allergan Finance, LLC; Allergan Sales, LLC; Allergan USA, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. (referenced in the Complaint collectively as the "Marketing Defendants," hereinafter referred to as "Manufacturer Defendants"). Compl. ¶¶ 124-207.

4.     The second group of Defendants consists of Anda, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; AmerisourceBergen Drug Corporation; and Cardinal Health, Inc. (collectively, "Distributor Defendants"). *Id.* ¶¶ 208-20.

5.     The third group and final group of Defendants consists of The Kroger Co.; Kroger Limited Partnership II; CVS Health Corporation; CVS Pharmacy, Inc.; CVS Indiana, L.L.C.; Walmart Inc.;[1] Wal-Mart Stores East, LP; Noramco, Inc.; Walgreen Co., and Walgreen Eastern Co., Inc. (referenced in the Complaint collectively as the "National Retail Pharmacies," referred to here as the "Retail Pharmacy Defendants"). *Id.* ¶¶ 221-35.

6.     With respect to the Distributor Defendants, Plaintiffs complain of over-distribution of prescription opioids into Florida and allege that the Distributor Defendants' failure to "detect and warn of diversion of" prescription opioids was a "substantial cause for the volume of prescription opioids plaguing Plaintiffs' communities." *Id.* ¶ 208.

---

[1] As of February 1, 2018, Wal-Mart Stores, Inc. is known as Walmart Inc., not Wal-Mart Inc.

7.    The Complaint asserts five counts against Distributor Defendants: violation of Florida's Racketeer Influenced and Corrupt Organization Act (Count I); violation of Florida's Deceptive and Unfair Trade Practices Act (Count III); negligence (Count V); nuisance (Count VI); and unjust enrichment (Count VII). *Id.* ¶¶ 877-947, Prayer for Relief.

8.    Although Plaintiffs purport to disavow stating a federal question, *id.* ¶ 83, Plaintiffs plead, among other things, that Distributor Defendants were required to "report 'suspicious orders' [of controlled substances] which the Distributor Defendants knew were likely to be diverted, to the relevant governmental authorities," *id.* ¶ 576, and that they "breached their duty to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates," *id.* ¶ 578.

9.    Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiffs plead that alleged violations of federal law form the basis for its claims.

10.    On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to the Honorable Dan A. Polster of the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (Dec. 5,

2017), ECF No. 328. More than 2,300 opioid-related actions are pending in the MDL, including dozens of actions originally filed in this district.[2]

11.     CVS intends to tag this case immediately for transfer to the MDL.

12.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on CVS in the state court action are attached as Exhibits 1 (the Complaint) and 2.

## II.     TIMELINESS OF REMOVAL

13.     CVS Pharmacy, Inc. was served with the Complaint on November 6, 2019.

14.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiffs' Complaint. *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

---

[2] *See, e.g., Seminole Tribe of Florida* v. *AmerisourceBergen Drug Corporation et al.,* No. 0:19-cv-62286 (S.D. Fla.) (transferred to MDL Oct. 24, 2019); *City of Florida City, Florida* v. *Purdue Pharma, L.P. et al.,* 1:19-cv-22476 (S.D. Fla.) (transferred to MDL Jul. 9, 2019); *Broward County, Florida* v. *Purdue Pharma L.P. et al.,* 0:18-cv-60535 (S.D. Fla.) (transferred to MDL Apr. 2, 2018); *City of Fort Lauderdale, Florida* v. *Purdue Pharma L.P. et al.*, 0:18-cv-62830 (S.D. Fla.) (transferred to MDL Dec. 4, 2018); *City of Pembroke Pines, Florida* v. *Purdue Pharma L.P. et al.,* 0:18-cv-62995 (S.D. Fla.) (transferred to MDL Jan. 2, 2019); *City of Miami Gardens, Florida* v. *AmerisourceBergen Drug Corporation et al,.* 1:18-cv-22182 (S.D. Fla.) (transferred to MDL Jul. 25, 2018); *City of Deerfield Beach, Florida* v. *Purdue Pharma L.P. et al.,* 0:18-cv-63076 (S.D. Fla.) (transferred to MDL Jan. 22, 2019); *Broward Behavioral Health Coalition* v. *Purdue Pharma L.P. et al.,* 0:19-cv-61172 (S.D. Fla.) (transferred to MDL May 29, 2019); *Miami-Dade County, Florida* v. *AmerisourceBergen Drug Corporation et al.,* 1:18-cv-21608 (S.D. Fla.) (transferred to MDL May 9, 2018); *Siebler* v. *Purdue Pharma, L.P. et al.,* 1:18-cv-23684 (S.D. Fla.) (transferred to MDL Oct. 25, 2018).

15.    "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

## III.   PROPRIETY OF VENUE

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida, where the state court action was pending prior to removal, is a state court within this federal district and division.

## IV.   BASIS OF REMOVAL

17.    Removal is proper pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiffs' claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq*.[3]

---

[3] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer* v. *Jim's Concrete of Brevard, Inc.,* 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp.* v. *Sheets,* 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception.*" (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.,* 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation

18.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

19.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 830, 839 (2002).

20.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.* v. *Thompson,* 478 U.S. 804, 808-09 (1986) (citation omitted); *see Gully* v. *First Nat'l Bank,* 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

21.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton,* 568 U.S. 251, 258 (2013); *see Grable & Sons Metal*

---

omitted)).

More recently, a unanimous Supreme Court in *Mim*s v. *Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (brackets and citations omitted).

*Prods., Inc.* v. *Darue Eng'g & Mfg.,* 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn,* 568 U.S. at 258 (quoting *Grable,* 545 U.S. at 314).

22.    As set forth below, this case meets all four requirements.[4]

23.    Although Plaintiffs ostensibly plead some of their theories of recovery against Distributor Defendants as state law claims, they base the underlying theory of liability on Distributor Defendants' alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.,* that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that Distributor Defendants allegedly had a duty to identify, report, and then not ship.

24.    The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.,* and its implementing regulations. *E.g.* 21 C.F.R. § 1301.75(b) (duty to monitor and report suspicious orders of controlled substances). The Complaint makes this clear on its face. Compl. ¶ 551 (discussing the requirement to "design and operate a system to

---

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiffs' underlying claims. *See Gunn* v. *Minton,* 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

disclose . . . suspicious orders of controlled substances" and maintain "effective controls against diversion"); *id.* ¶¶ 556-560, 564 (discussing DEA letters and briefings that establish a duty to report suspicious orders and prevent opioid diversion); *id.* ¶ 580 (discussing duties to inform authorities of suspicious orders, including the DEA); *id.* ¶¶ 834, 846 (alleging that Defendants violated "the federal Controlled Substances Act and analogous state common and statutory law" in failing to report suspicious orders of prescription opioids); *id.* ¶ 884 (alleging that Defendants "fail[ed] to actually disclose . . . suspicious orders, as required of 'registrants' by the federal CSA, 21 C.F.R. § 1304.74(b), which is incorporated into Florida law by the FL DCA," and defining "registrants" who must monitor and report suspicious orders of controlled substances under 21 U.S.C.§ 823; 21 C.F.R. § 1300.02(b)).

25.    The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc.* v. *DEA,* 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.,* Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007),

as source of DEA's "Shipping Requirement"). Again, Plaintiffs' Complaint makes this clear on its face. *See, e.g.,* Compl. ¶ 884 (citing 21 U.S.C. § 823).

26.     Plaintiffs' theories of liability against Distributor Defendants, as pled in the Complaint, are predicated on allegations that Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiffs' claims—to refuse to ship such orders to Florida pharmacies.

27.     Specifically, Plaintiffs plead that Distributor Defendants violated federal law with, among others, the following allegations:

a.     "The failure of Defendants to maintain effective controls, and to investigate, report, and take steps to halt orders that they knew or should have known were suspicious breached both their statutory and common law duties." Compl. ¶ 469.

b.     "Defendants are subject to various duties to report the quantity of Schedule II controlled substances in order to monitor such substances and prevent oversupply and diversion into the illicit market." *Id.* ¶ 545.

c.     "In addition to reporting all suspicious orders, distributors must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, the distributor can determine that the order is not likely to be diverted into illegal channels." *Id.* ¶ 553.

d.     "The Distributor Defendants failed to report 'suspicious orders,' which the Distributor Defendants knew were likely to be diverted, to the relevant governmental authorities." *Id.* ¶ 576.

e.     "The Distributor Defendants breached their duty to 'design and operate a system to disclose to the registrant suspicious orders of controlled substances' and failed to inform the authorities, including the DEA, of suspicious orders when discovered in violation of their duties under state law." *Id.* ¶ 580.

28.     Critically, Plaintiffs' theory of liability also relies on expansive reading of federal law that calls into question an agency determination. Plaintiffs allege not only that Distributor Defendants should have detected and reported discrete suspicious orders by their respective individual pharmacy customers, but that Distributor Defendants should have recognized that the *total volume* of prescription opioids distributed by *all* wholesalers to various regions was suspicious or unreasonable. *See, e.g.,* Compl. ¶ 72 ("Defendants have contributed substantially to the opioid crisis by selling and distributing far greater quantities of prescription opioids than they know should be necessary for legitimate medical uses"); *id.* ¶ 58 (alleging Defendants "flooded communities with opioids in quantities that they knew or should have known exceeded any legitimate market for opioids"); *id.* ¶ 71 ("In 2016, 289 million prescriptions for opioids were filled in the U.S.—enough to medicate every adult in America around the clock for a month.").

29.     To succeed on that theory, Plaintiffs would thus have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was unreasonable. However, the total amount of prescription opioids distributed in any given year turns on annual aggregate production quotas established by the DEA. Specifically, the DEA must "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful

export requirements, and for the establishment and maintenance of reserve stocks." 21 C.F.R. § 1303.11(a). In making this determination, the DEA must consider "[p]rojected demand" for such substances. 21 C.F.R § 1303.11(b). Thus, to show that the total quantity of prescription opioids that Distributor Defendants distributed was unreasonable, Plaintiffs would have to show that the annual aggregate production quotas set by the DEA, pursuant to a federal statute, were themselves unreasonable.[5]

30.     The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258.

31.     **First,** Plaintiffs' state law claims "necessarily raise" a federal question because "their asserted right to relief under state law requires resolution of a federal question." *R.I. Fishermen's All.,* 585 F.3d at 49; *see also PNC Bank, N.A.* v. *PPL Elec. Util. Corp.,* 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief depends upon the construction or application of federal law." (citation omitted)); *see also North Carolina ex rel. N.C. Dep't of Admin.* v. *Alcoa Power Generating, Inc.,* 853 F.3d

---

[5] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every sale, delivery or other disposal" by them of prescription opioids. In other words, it has been the case for years that each Distributor Defendant has reported to DEA the total volume of prescription opioids it distributed. To succeed on its theory of liability that Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiffs would have to show that Distributor Defendants' existing reporting to DEA was inadequate.

140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *V.I. Hous. Auth.* v. *Coastal Gen. Constr. Servs. Corp.,* 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or *if the action requires construction of a federal statute,* or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

32.   As pled, Plaintiffs' claims against Distributor Defendants require Plaintiffs to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into Florida.

33.   For example, in pleading negligence, Plaintiffs allege that Distributor Defendants "had a duty to exercise reasonable care in . . . distributing . . . opioid drugs," and that Distributor Defendants breached this duty by "[c]hoosing not to or failing to stop or suspend shipments of suspicious orders." Compl. ¶¶ 906, 918 (Count V). As noted, however, the alleged duties to report and halt shipments of suspicious orders arise under the federal CSA. "Thus, it is not logically possible for [Plaintiffs] to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Distributor Defendants to report and halt shipments of suspicious orders for prescription opioids under the

circumstances. *R.I. Fishermen's All.,* 585 F.3d at 49. "That is enough to make out a federal question." *Id.*

34.   While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by ***exclusive*** reliance on state law," *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, at 392 (1987) (emphasis added), Plaintiffs here allege violations of federal duties as the basis for their state-law claims.[6] Tellingly, Plaintiffs cite extensively to DEA letters and briefings to establish a duty to prevent suspicious orders and prevent opioid diversion.[7] *See, e.g.,* Compl. ¶¶ 564, 556-560.

---

[6] Furthermore, it is not necessary for federal jurisdiction that Defendants establish that all of Plaintiffs' counts against it raise a federal question. Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' original jurisdiction." *City of Chicago* v. *Int'l College of Surgeons,* 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiffs' remaining counts against Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also R. I. Fishermen's All.* 585 F.3d at 48 ("[I]f the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest.").

[7] Plaintiffs specifically cite only three provision of Florida law that they claim give rise to the duties to report and halt shipments of suspicious orders: Fla. Stat. § 499.0121(14), (15)(b) and (15)(c). See Compl. ¶¶ 471-72. Subdivision (14) of the statute requires prescription drug wholesale distributors to "submit a report to the department of its receipts and distributions of controlled substances" that fall within certain schedules, Fla. Stat. § 499.0121(14), but the provision imposes no requirement to report or halt shipments of suspicious orders for controlled substances. Subdivision (15)(b) of the statute requires wholesale distributors to "establish internal policies and procedures for identifying suspicious orders and preventing suspicious transactions," Fla. Stat. § 499.0121(15), but does not

35.    In sum, the Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA—as well as questions regarding the scope of duties arising under the CSA.

36.    **Second,** this federal issue is "actually disputed" because the parties disagree as to scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiffs plead them, arise only under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn,* 568 U.S. at 259.

37.    **Third,** the federal issue presented by Plaintiffs' claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn,* 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (citation omitted); *Municipality of Mayaguez* v. *Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) ("[A] federal issue may also be substantial where the resolution of the issue has 'broader significance . . . for the Federal Government.' (quoting Gunn, 568 U.S. at 260)). As the Supreme Court explained in *Grable,* "[t]he doctrine captures the commonsense notion that a

---

expressly require a distributor to halt shipments of suspicious orders for controlled substances. Subdivision (15)(c) of the statute prohibits wholesale distributors from "distribut[ing] controlled substances to an entity if any criminal history record check for any person associated with that entity" reveals certain drug offenses, *id.*, but again imposes no requirement to report or halt shipments of suspicious orders for controlled substances.

federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

38.    Plaintiffs' theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong. (2nd Sess. 1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

39.    Plaintiffs' theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription medication supply chain, *Broder* v. *Cablevision Sys. Corp.,* 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc.* v. *UBS Sec., LLC,* 770 F.3d 1010, 1024 (2d Cir. 2014). The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the

intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson* v. *Wells Fargo Nat'l Bank, NA.,* 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, NA.,* 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of federal statute "over which the District Court properly exercised removal jurisdiction"); *R.I. Fishermen's All.,* 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers."). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable." Anversa* v. *Partners Healthcare Sys., Inc.,* 835 F.3d 167, 174 n.5 (1st Cir. 2016).

40. Plaintiffs' attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction

into a necessary one." *Grable*, 545 U.S. at 317; see also, e.g., *Ranck* v. *Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at \*4-\*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

41.    Removal is particularly appropriate here because Plaintiffs' action is but one of more than 2,000 similar actions nationwide pending in the MDL in the Northern District of Ohio. The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[8]

42.    **Fourth,** and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, NA.,* 189 F. App'x at 104 n.3.

---

[8] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

43.     In summary, removal of this action is appropriate because Plaintiffs'
"state-law claim[s] necessarily raise a stated federal issue, actually disputed and
substantial, which a federal forum may entertain without disturbing any
congressionally approved balance of federal and state judicial responsibilities."
*Grable,* 545 U.S. at 314; *see also, e.g., PNC Bank, NA.,* 189 F. App'x at 104 n.3 (state
law claim based on violation of Internal Revenue Code "gives rise to federal-
question jurisdiction" under *Grable); New York ex rel. Jacobson,* 824 F.3d at 315-18
(state law claims based on defendant's alleged violation of Internal Revenue Code
satisfy *Grable); NASDAQ OMX Grp., Inc.,* 770 F.3d at 1031 (state law claims
premised on violations of Exchange Act "necessarily raise disputed issues of federal
law of significant interest to the federal system as a whole"); *Gilmore* v.
*Weatherford,* 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose
their conversion claim without the court reaching the federal question, it seems that
they cannot win unless the court answers that question. Thus, plaintiffs' 'right to
relief necessarily depends on resolution of a substantial question of federal law.'")
(citation omitted); *Broder,* 418 F.3d at 196 (state law claims premised on cable
provider's alleged violations of Communication Act's uniform rate requirement
satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck,* No. 3:16-cv-
02409-AA, 2017 WL 1752954, at *5 (state law claims based on violations of Cable
Communications Policy Act satisfy *Grable).*

44.     To the extent that the Court determines that some, but not all, of
Plaintiffs' claims state a substantial federal question, the Court can evaluate

whether to retain the non-federal claims against the Manufacturer Defendants, Distributor Defendants and Retail Pharmacy Defendants, under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.   OTHER REMOVAL ISSUES

45.   Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

46.   The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below: CVS Health Corporation; CVS Indiana, L.L.C.; Actavis Pharma, Inc.; Actavis LLC; Watson Laboratories, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Anda, Inc.; AmerisourceBergen Drug Corporation; Endo Pharmaceuticals Inc.; Endo Health Solutions Inc.; Par Pharmaceutical Inc.; Par Pharmaceutical Companies, Inc.; Amneal Pharmaceuticals, Inc.; Amneal Pharmaceuticals LLC; Allergan Finance, LLC; Allergan Sales, LLC; Allergan USA, Inc.; Assertio Therapeutics, Inc. f/k/a Depomed, Inc.; Henry Schein, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Mallinckrodt LLC; SpecGx LLC; Walmart Inc.; Wal-Mart Stores East, LP; Abbott Laboratories; Abbott Laboratories Inc.; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; The Kroger Co. and Kroger Limited Partnership II.

47.     Tammy Heyward, Diana Muller, Briann Barnes, Lindsey Bonafacio, Rebecca Harville, Draupadi Daley, Damon Storhoff and James Speed have been served and consent to removal.[9]

48.     The remaining Defendants have not been properly served, and thus their consent to removal is not required. Nevertheless, out of an abundance of caution, Defendants Russell Gasdia; Allergan plc; [10] Mallinckrodt plc, Cardinal Health, Inc.; Teva Pharmaceutical Industries Ltd.;[11] and Johnson & Johnson

---

[9] On September 15, 2019, Purdue and its affiliated debtors filed voluntary bankruptcy petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. The case is docketed as In re Purdue Pharma L.P., No. 19-23649, and is pending before U.S. Bankruptcy Judge Robert D. Drain. Pursuant to 11 U.S.C. § 362, this filing of the bankruptcy petition operates as a stay as to Defendants Purdue Pharma L.P. and Purdue Pharma Inc. (the "Purdue Debtors"). Moreover, on October 11, 2019, Judge Drain issued an Order pursuant to 11 U.S.C. § 105(a), which was amended on October 18, 2019, enjoining the commencement or continuation of litigation against the Purdue Debtors and certain Related Parties through November 6, 2019. On November 6, 2019, Judge Drain extended the injunction to April 8, 2020. See Not. of Suggestion of Bankr. & Auto. Stay of Proceedings at 1 (Sept. 16, 2019); Order Pursuant to 11 U.S.C. § 105(a) Granting, In Part, Motion for Preliminary Injunction, In re Purdue Pharma L.P., et al., No. 19-08289-rdd, Dkt. 82 (Bankr. S.D.N.Y. Oct. 11, 2019), amended, Dkt. 89 (Bankr. S.D.N.Y. Oct. 18, 2019); Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, In re Purdue Pharma L.P., et al., No. 19-08289-rdd, Dkt. 105 (Bankr. S.D.N.Y. Nov. 6, 2019). It is expected that Tammy Heyward, Damon Storhoff, Diana Muller, Briann Barnes, James Speed, Lindsey Bonafacio, Rebecca Harville and Draupadi Daley who are former employees of Purdue Pharma, L.P. will soon be added to the list of Related Parties pursuant to the procedure set forth in the Second Amended Order. To the extent consent of these individuals is required, they consent to removal. By consenting to removal, none of these individuals waive any right or defense and expressly reserve them, including in connection with the Bankruptcy Court's stay as well as all rights and defenses in this action, including lack of personal jurisdiction.

[10] Allergan plc, an Irish corporation, has not been served, but nevertheless consents to removal out of an abundance of caution and expressly reserves all rights and defenses including those related to personal jurisdiction and service of process.

[11] Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") is a foreign Israeli company

consent to removal. The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses related to service of process and personal jurisdiction.

49.     Pursuant to 28 U.S.C. § 1446(d), CVS will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiffs.

50.     Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendant's right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal, without waiver of its objection to personal jurisdiction.

---

and is not subject to personal jurisdiction in the United States.  Teva Ltd. expressly reserves all defenses, including those related to personal jurisdiction and service of process.

**WHEREFORE,** CVS removes this action, pending in the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida, Case No. CACE-19-018882, to this Court.

DATED: December 5, 2019

_/s/ Nathan M. Berman_
Florida Bar No. 0329230
Marcos E. Hasbun
Florida Bar No. 0145270
Zuckerman Spaeder LLP
101 East Kennedy Blvd, Suite 1200
Tampa, FL 33602
Tel: 813.221.1010
Email: nberman@zuckerman.com

_Counsel for CVS Health Corporation, CVS Indiana, L.L.C. & CVS Pharmacy, Inc._

**WRITTEN CONSENT OF OTHER DEFENDANTS**

*/s/Paul J. McMahon*
Paul J. McMahon
Florida Bar No. 204552
pjm@pjmlawmiami.com
The Wiseheart Building
2840 S.W. Third Avenue
Miami, Florida 33129
Telephone:  (305) 285-1222
Facsimile: (305) 858-4864

Kevin M. Sadler*
Baker Botts LLP
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, California 94304
Email: kevin.sadler@bakerbotts.com
Telephone:  (650) 739.7518
Facsimile:  (650) 739.7618

Scott D. Powers*
David T. Arlington*
Baker Botts LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Email: scott.powers@bakerbotts.com
Email: david.arlington@bakerbotts.com
Telephone:  (512) 322-2678
Facsimile:  (512) 322-8392
*denotes national counsel who will seek pro hac
vice admission*

*Counsel for Defendant Assertio Therapeutics, Inc.
f/k/a Depomed, Inc.*

Julie B. Porter
Salvatore Prescott & Porter, PLLC
1010 Davis Street
Evanston, IL 60201
(312) 283-5711
porter@spplawyers.com

*Counsel for Russell Gasdia*

John P. McDonald*
C. Scott Jones*
Brandan J. Montminy*
LOCKE LORD - DALLAS
2200 Ross Avenue, Ste. 2800
Dallas, Texas 75201
214-740-8445
jpmcdonald@lockelord.com
sjones@lockelord.com
brandan.montminy@lockelord.com

*denotes national counsel who will seek pro hac vice admission if necessary.

Counsel for Henry Schein, Inc.

/s/ Donna Welch
Donna Welch, P.C.*
Martin L. Roth*
Timothy Knapp*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com
martin.roth@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C.*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
jennifer.levy@kirkland.com

*denotes national counsel who will seek pro hac vice admission

Counsel for Allergan Finance, LLC, Allergan Sales, LLC and Allergan USA, Inc.

*/s/Brien T. O'Connor*
Brien T. O'Connor*
Andrew J. O'Connor*
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Email: brien.o'connor@ropesgray.com
Email: andrew.o'connor@ropesgray.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Mallinckrodt LLC and SpecGx LLC*

*/s/ Michael S. Vitale*
Michael S. Vitale, Esq.
Florida Bar No. 17136
Primary Email:  mvitale@bakerlaw.com
Secondary Email:  mrios@bakerlaw.com
Lindy K. Keown, Esq.
Florida Bar No. 117888
Primary Email:  lkeown@bakerlaw.com
Secondary Email: emachin@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

*Counsel for Cardinal Health, Inc.*

/s/ *Christopher M. Lomax*
Christopher M. Lomax
Florida Bar No. 56220
JONES DAY
Brickell World Plaza
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Tel: (305) 714-9700
Fax: (305) 714-9799
clomax@jonesday.com

Christopher Lovrien*
Sarah G. Conway*
JONES DAY

555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
Tel: (213) 243-2567
Fax: (213) 243-2539
cjlovrien@jonesday.com
sgconway@jonesday.com

*National counsel seeking pro hac vice admission*

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores East, LP*

John A. McCauley*
VENABLE LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
T: (410) 244-7655
F: (410) 244-7742
JMcCauley@Venable.com

*denotes national counsel who will seek pro hac vice admission

*Counsel for Abbott Laboratories and Abbott Laboratories Inc.*

/s/ Brian M. Ercole
Brian M. Ercole (FL Bar No. 102189)
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131-2339
Tel.: (305) 415-3000

brian.ercole@morganlewis.com

Nancy L. Patterson*
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Tel.: (713) 890-5000
nancy.patterson@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel.: (215) 963-5000
steven.reed@morganlewis.com

*denotes national counsel who will seek pro hac
vice admission

TEVA PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; WATSON
LABORATORIES, INC.; ACTAVIS LLC; and
ACTAVIS PHARMA, INC.

/s/ Lester C. Houtz
Lester C. Houtz
Alex J. Harris*
BARTLIT BECK LLP
1801 Wewatta Street
Denver, CO 80202
Tel: (303) 592-3177
Fax: (303) 592-3140
les.houtz@bartlitbeck.com
alex.harris@bartlitbeck.com

* denotes national counsel who will seek pro
hac vice admission

Counsel for Walgreen Co. and Walgreen
Eastern Co.

/s/ Daniel J. Gerber
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
E-mail: dgerber@rumberger.com (primary)
docketingorlando@rumberger.com and
dgerbersecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

*Counsel for H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.*

*/s/ Charles C. Lifland*
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

*/s/ NELSON C. BELLIDO*
NELSON C. BELLIDO
Florida Bar No. 974048
ROIG LAWYERS
44 W. Flagler Street, Suite 2100
Miami, FL 33130
Tel: (305) 405-0997
Pleadings@RoigLawyers.com

Pam Ferrell
pferrell@bowlesrice.com

United Square, Fifth Floor
501 Avery Street
Parkersburg, WV 26101
Telephone: (304) 420-5590
Facsimile: (304) 420-5587

*Counsel for The Kroger Co. and Kroger Limited Partnership II*

*/s/ Michael J. Salimbene*
Michael J. Salimbene*
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
(215) 851-8100
msalimbene@reedsmith.com

*Pending pro hac vice admission.

*Counsel for AmerisourceBergen Drug
Corporation*

Joanna Persio (*pro hac vice forthcoming*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
T: 202-942-5504
joanna.persio@arnoldporter.com

*Counsel for Endo Pharmaceuticals Inc.,
Endo Health Solutions Inc., Par
Pharmaceutical Inc., and
Par Pharmaceutical Companies, Inc.*

Daniel G. Jarcho*
D.C. Bar No. 391837
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
E-mail: daniel.jarcho@alston.com

Cari K. Dawson*
Georgia Bar No. 213490
Jenny A. Hergenrother*
Georgia Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
E-mail: cari.dawson@alston.com

E-mail: jenny.hergenrother@alston.com

*Denotes national counsel who will seek pro hac vice admission

*Counsel for Noramco, Inc.*

/s/ Michael A. Gross
Michael A. Gross
(FL Bar # 115970)
Ulmer & Berne LLP
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
(561) 989-3238
mgross@ulmer.com

*Attorney for Defendants Amneal*
*Pharmaceuticals, Inc. and Amneal*
*Pharmaceuticals LLC*

*/s/ Ana Romes*
Ana Romes
Florida Bar No. 101179
**Foley & Lardner LLP**
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131-2132
Telephone:  (305) 482-8400
Facsimile:  (305) 482-8600
aromes@foley.com

– and –

James W. Matthews*
Ana M. Francisco*
Katy E. Koski*
**Foley & Lardner LLP**
111 Huntington Avenue, Suite 2500
Boston, MA  02199-7610
Telephone:  (617) 342-4000
jmatthews@foley.com
afrancisco@foley.com
kkoski@foley.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Defendant Anda, Inc.*