**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

FLORIDA HEALTH SCIENCES
CENTER, INC. *et al.*,

*Plaintiffs*

v.

RICHARD SACKLER, *et al.*,

*Defendants*.

Civil Action No. 0:19-CV-62992-CIV
MARTINEZ/Snow

**DEFENDANT CVS PHARMACY, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

7095803.1

Defendant CVS Pharmacy, Inc. submits this response in opposition to Plaintiffs' Motion and Memorandum in Support of Emergency Motion to Remand. ECF No. 13.

## INTRODUCTION

This lawsuit is one of more than 2,600 opioid-related lawsuits filed against various defendants, including manufacturers, distributors, and retailers of prescription opioid medications. Plaintiffs seek damages in the form of "increased financial burdens" as a result of unreimbursed costs for "providing healthcare and medical care . . . prescription drugs used to treat addiction . . . mental-health services, treatment, counseling, rehabilitation services, and social services . . . [and] treatment of infants born with opioid-related medical conditions or born dependent on opioids." Compl. ¶ 719; ECF No. 1-1.

On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created the Opiate Multidistrict Litigation pending in the Northern District of Ohio, *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio) ("Opiate MDL") for cases like this one, in which plaintiffs allege that: "(1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re: Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017). To date, thousands of lawsuits have been transferred to the Opiate MDL.

This case is indistinguishable from those cases. And just as it has done hundreds of times before, the JPML already has issued a Conditional Transfer Order ("CTO"),

conditionally transferring this case to the Opiate MDL. CTO-127 at 1, JPML ECF No. 6566 (previously filed in this case at ECF No. 30-3). Following its normal procedure, the JPML temporarily stayed that order to allow Plaintiffs the opportunity to oppose transfer. *Id.* At one of its bimonthly hearings, the JPML will consider whether to order the case transferred to the Opiate MDL. That is where Plaintiffs' motion to remand should be decided.

Therefore, rather than decide Plaintiffs' motion, the Court should grant CVS's Motion to Stay Proceedings Pending Likely Transfer to Multidistrict Litigation ("Stay Motion"), ECF No. 30, to allow the JPML time to consider whether to finalize its transfer order. If transferred, the Opiate MDL will decide whether this case and all of the similar cases already pending before it should remain in federal court or should be remanded. Indeed, as district courts in the Southern District of Florida have recognized, "judicial economy and uniformity dictate that the Court defer ruling on Plaintiffs' Motion to Remand in order to give an opportunity to all similarly situated . . . cases for transfer to the MDL Judge and to allow the MDL judge to resolve the issues presented by similar remand motions." *Fontanilles* v. *Merck & Co.*, 2004 WL 5569871, at *1 (S.D. Fla., Dec. 15, 2004).

Just over one month ago, a district court in another opioid action brought by a group of hospital plaintiffs stayed proceedings, including a pending remand motion, in an opioid case removed on the same federal question theory that was the basis for removal here. *See* Order, *Takoma Reg'l Hosp.* v. *Purdue Pharma, L.P.*, No. 2:19-cv-00157-HSM-CHS (E.D. Tenn. Oct. 4, 2019). As the *Takoma* court explained, "[t]o the

2

extent that other removing defendants have asserted similar or identical theories of federal question jurisdiction in opioid-related cases, Judge Polster will be able to issue a uniform ruling on the matter, minimizing the risk of inconsistency." *Id.*; *see also* Order at 3, *Kentucky* v. *McKesson Corp.*, No. 3:18-cv-00010 (E.D. Ky. Apr. 12, 2018) ("Judge Polster has indicated his desire to address motions to remand collectively . . . ."). Scores of judges around the country have reached the same conclusion in substantively identical opioid cases. *See* Exhibit 1 (listing more than 80 cases that have been removed on federal question grounds and either stayed pending transfer or transferred to the Opiate MDL). The same result should hold here; the Court should stay these proceedings and defer resolution of Plaintiffs' motion to remand.

Should this Court decide to depart from those judges who have found a stay appropriate and reach Plaintiffs' motion now, the motion should nevertheless be denied. Plaintiffs' claims present a federal issue that necessitates a decision by a federal court. Plaintiffs contend that their claims arise solely and independently under state law. But simply omitting the necessary federal law from a complaint does not change the reality that Plaintiffs claims arise solely from federal law. The federal aspect to this case is not, as Plaintiffs contend, some small element. On the contrary, the sole source of Defendants' alleged duties underpinning this case is the federal Controlled Substances Act ("CSA"), and *only* the federal CSA. Plaintiffs' reliance on district court cases from a handful of other jurisdictions is misplaced, as courts

7095803.1

nationwide have found that the jurisdictional questions presented in opioid cases are sufficiently complex as to warrant stays pending transfer to the Opiate MDL.

## BACKGROUND

Plaintiffs filed this opioid lawsuit in the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida. CVS Pharmacy, Inc. removed the action to this Court based on federal question jurisdiction. ECF No. 1. On December 17, 2019, Plaintiffs moved to remand. ECF No. 10. Plaintiffs filed an amended motion to remand on December 18, 2019, which added a request for oral argument. ECF No. 13. On December 23, 2019, the JPML issued a CTO, finding that this action appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." CTO-127 at 1, JPML ECF No. 6566 (previously filed in this case at ECF No. 30-3). On December 26, 2019, CVS filed a Stay Motion. ECF No. 30.

## ARGUMENT

## I.     THIS COURT SHOULD STAY THIS ACTION PENDING THE IMMINENT TRANSFER DECISION.

As an initial matter, and as set forth more fully in CVS's Stay Motion, the Court should defer decision on Plaintiffs' motion to remand. Plaintiffs' allegations are nearly identical to the allegations in thousands of opioid lawsuits that have already been transferred to the Opiate MDL. The JPML has already entered a CTO. As is the JPML's typical procedure, that order is currently stayed to allow Plaintiffs the opportunity to file an opposition, *id.*, and the matter will be decided at one of the

4

JPML's upcoming hearings.[1]

Because the JPML has already transferred numerous cases from federal courts in Florida[2] and other district courts around the country, it is likely this one will be transferred as well. Once transferred, the Opiate MDL can decide whether this case—and all of the similar cases already pending before it—should remain in federal court or should be remanded. That is the purpose of multidistrict litigation—to conserve judicial resources and ensure consistency in rulings.[3] As Chief Judge Edmund A. Sargus, Jr. of the Southern District of Ohio observed: "Plaintiff's jurisdictional concern is capable of arising in several of these prescription opioid cases across the country. . . . As such, this Court declines to rule on the merits of Plaintiff's Motion to Remand and defers that decision to Judge Polster . . . to determine where the case should be." Order Denying Pl.s' Emergency Omnibus Mot. to Remand at 1-2, *Noble Cty. Comm'rs* v. *Cardinal Health, Inc.*, No. 2:18-cv-01379 (S.D. Ohio Dec. 14, 2018) (attached as Exhibit 2).

---

[1]   *See* Hearing Information, Judicial Panel on Multidistrict Litigation, http://www.jpml.uscourts.gov/hearing-information.

[2] *E.g., Palm Beach County* v. *Purdue Pharma L.P., et al.*, No. 9:18-cv-80749-BB (S.D. Fla., Oct. 4, 2018); *Hillsborough County* v. *Purdue Pharma L.P.*, No. 8:18-cv-02716 (M.D. Fla., Nov. 20, 2018); *Levy County* v. *Purdue Pharma L.P.*, No. 1:18-cv-00100 (N.D. Fla., July 5, 2018); *Town of Eatonville, Florida* v. *Endo Health Solutions Inc., et al*, No. 6:19-cv-02003-WBK-GJK (M.D. Fla., Oct. 21, 2019); *City of Florida City, Florida* v. *Purdue Pharma L.P.*, NO. 1:19-cv-22476 (S.D. Fla., June 14, 2019); *City of Fort Lauderdale, Florida* v. *Purdue Pharma L.P.*, No. 0:18-cv-62830 (S.D. Fla., Nov. 20, 2018).

[3] *See Bonenfant* v. *R.J. Reynolds Tobacco Co.*, No. 07–60301–CIV, 2007 WL 2409980, at *1 (S.D. Fla., July 31, 2007) ("Courts commonly stay such actions because '[a] stay pending the [JPML]'s decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well.'") (quoting *Manual for Complex Litigation* § 22.35 (4th ed. 2004).

7095803.1

Similarly, in a virtually identical hospital case, *Takoma Regional Hospital*, defendants removed the action and plaintiffs sought remand. Finding that the case was just "like so many others around the nation," the court granted a stay and deferred a decision on the plaintiffs' motion to remand to allow Judge Polster to "issue a uniform ruling on the matter, minimizing the risk of inconsistency." Order at 1, 3, No. 2:19-cv-157 (previously filed in this case at ECF No. 30-1); *see also* Order at 4, *County of Jim Hogg* v. *CVS Health Corp.,* No. 4:19-cv-02816 (S.D. Tex. Sept. 4, 2019) (staying a case removed on federal question (among other) grounds, and explaining that the case "presents factually and legally difficult issues" and that "[o]ther cases consolidated before the MDL transferee court in Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of those issues, to improve judicial economy, and to reduce the risk of inconsistent results.") (attached as Exhibit 3); Order at 5, *Bd. of Cty Comm'rs of Seminole Cty.* v. *Purdue Pharma LP*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019) (finding that "at first blush, jurisdiction does not appear to be lacking in this case," and concluding "the existence of these difficult questions of jurisdiction weigh in favor of their resolution by one court making similar rulings in hundreds of similar cases") (attached as Exhibit 4).[4] That is precisely why

---

[4] The Court is not, as Plaintiffs suggest, obligated to consider Plaintiffs' jurisdictional arguments before deciding CVS' Stay Motion. Mot. to Remand at 4. That position has been rejected by numerous courts and is inconsistent with the stays that have already been granted in scores of opioid cases. *See Hulley Enterps. Ltd.* v. *Russian Fed'n*, 211 F. Supp. 3d 269, 279 (D.D.C. 2016) (concluding that there is not a "single case requiring that a court establish jurisdiction before taking measures pursuant to its inherent power to manage its docket"); *see also Pennsylvania ex rel. Kane* v. *McGraw-Hill Cos.*, No. 1:13-cv-605, 2013 WL 1397434, at *2 (M.D. Pa. Apr. 5, 2013) (finding that " [There is] no authority for the principle that district courts must examine subject matter jurisdiction prior to instituting a stay."). Should this Court find it necessary to conduct a preliminary assessment of jurisdiction before

scores of opioid cases just like this one have been stayed by judges across the country. *See* Exhibit 1 (listing more than 80 cases that have been removed on federal question grounds and either stayed pending transfer or transferred to the opiate MDL).

Plaintiffs can point to no prejudice from a brief stay to allow the JPML time to consider whether to finalize its transfer decision. Indeed, Chief Judge Lee Rosenthal of the Southern District of Texas has expressly noted that the JPML's expeditious decision-making alleviates any potential prejudice. Order at 3, *Cty. of Jim Wells* v. *Purdue Pharma L.P.*, No. 4:19-cv-03580 (S.D. Tex. Oct. 4, 2019) (attached as Exhibit 5) ("The potential prejudice to the County if a stay is granted is from delay. That potential for prejudice is reduced by the relatively expeditious pace of the JPML's decision on transfer"); Order at 3, *Jim Hogg* (Sept. 4, 2019) (*see* Exhibit 3). Instead, Plaintiffs argue that expedited treatment is necessary to prevent this case from "disappear[ing] into the traffic jam that is the opioid multi-district litigation." Mot. to Remand at 3. That is an argument against transfer that should be raised to the JPML rather than to this Court. Nor would Plaintiffs be prejudiced by litigating its case in the Opiate MDL. The parties have made substantial progress there; discovery has been active for more than a year, including comprehensive written discovery,

---

addressing the motion to stay, that preliminary analysis confirms that a stay is warranted. *Beshear* v. *Volkswagen Group of America, Inc.*, 2016 WL 3040492, at *3 (E.D. Ky., May 25, 2016) (explaining that when courts conduct a preliminary analysis of jurisdiction, "the appropriate inquiry . . . is not necessarily the eventual possibility that this case *could* be remanded to state court, but rather whether there is any reasonable possibility that federal jurisdiction exists - or . . . whether federal jurisdiction is *clearly* absent. . . . '[If] the jurisdictional issue appears factually or legally difficult,' the court should 'determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding.'") *Id.*

7095803.1

approximately 300 defense depositions, tens of millions of documents produced, and dozens of expert reports and depositions. The initial claims set for trial already have been resolved, and the parties are in the process of preparing the next set of claims for trial. No prejudice will result from this case proceeding in the Opiate MDL.

Plaintiffs also complain that their motion to remand may not be timely addressed in the Opiate MDL. Mot. to Remand at 8. Yet numerous district courts have rejected this concern. *See, e.g.*, Order at 4, *Bd. of Cty. Comm'rs of Seminole Cty.* v. *Purdue Pharma L.P.*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019) (*see* Exhibit 4) ("The Court is confident that plaintiff's remand motion would be heard and ruled by the MDL court in due time."); Order at 5, *Bd. of Cty. Comm'rs of Osage Cty.* v. *Purdue Pharma L.P.*, No. 4:18-cv-00461 (N.D. Okla. Nov. 14, 2018) (granting motion to stay despite "moratorium" given Judge Polster's "preference for a 'framework' that would allow consistent resolution of remand motions" (citations omitted)) (previously filed in this case at ECF No. 30-14). Furthermore, any short delay will be more than offset by the judicial efficiency and consistency gained from allowing the Opiate MDL to address this motion together with the scores of similar motions already pending before it. Order at 3-4, *Takoma Reg'l Hosp.*, No. 2:19-cv-157 (E.D. Tenn. Oct. 4, 2019) ("months of delay in a case that would . . . probably take years to resolve is [not] likely to yield serious prejudice," but rather, is "simply the price of uniformity, which has long been—and for good reason—a central goal of the federal judiciary") (previously filed in this case at ECF No. 30-1); Order at 5, *City of Jenks* v. *Purdue Pharma L.P.*, No. 4:19-cv-00380 (N.D. Okla. Aug. 29, 2019) (rejecting plaintiff's argument that a stay

8

would cause the action to be "stuck in litigation purgatory" and ruling that "[t]he court does not doubt Judge Polster's intent to determine jurisdictional issues at the appropriate time.") (attached as Exhibit 6).

In short, a stay is warranted to best serve judicial efficiency and ensure consistent treatment of an action nearly identical to thousands of other cases.

## II. PLAINTIFFS' CLAIMS ARISE UNDER FEDERAL LAW AND THE COURT MAY EXERCISE FEDERAL QUESTION JURISDICTION OVER THIS ACTION.

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). Plaintiffs' action not only satisfies all four factors, but removal is especially proper because Plaintiffs' action is nearly identical to the approximately 2,600 actions currently pending in the Opiate MDL. Plaintiffs themselves concede that their claims involve an "opioid epidemic" occurring on a national scale. Compl. ¶ 720. ECF No. 1-1. Removal is proper.

### A. Federal Law Is Necessarily Raised.

Plaintiffs' state law claims necessarily raise a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question.[5] *Ayres* v. *General Motors Corp.*, 234 F.3d 514, 518 (11th Cir. 2000); *see also*

---

[5] It is not necessary for federal jurisdiction that CVS establish that all of Plaintiffs' counts against it raise a federal question. Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state

9

*North Carolina ex rel. N.C. Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("'[W]here the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration, internal quotation marks, and citation omitted)), *cert. denied*, 138 S. Ct. 981 (2018); *Bd. of Comm'rs of Se. La. Flood Prot. Auth. E.* v. *Tenn. Gas Pipeline Co.* (hereinafter, "*Louisiana Flood*"), 850 F.3d 714, 722-23 (5th Cir. 2017) (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care contained in federal law), *cert. denied*, 138 S. Ct. 420 (2017). Because the only possible source of the alleged duties of the Supply Chain Defendants[6] is the federal CSA, the scope of which the parties will debate, federal law is necessarily raised. The first *Grable* factor is satisfied.

---

law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997); *see also* 28 U.S.C. § 1367(a).

[6] Plaintiffs define CVS and certain other defendants as the "National Retail Pharmacies" and then define the "Distributor Defendants" and the "National Retail Pharmacies" collectively as "Supply Chain Defendants." The Distributor Defendants are named in their capacities as distributors of opioids. Although referred to as "National Retail Pharmacies," the allegations against the purported retailers similarly focus on the distribution of opioids. *See* Compl. ¶ 657 ("Each participant in the supply chain of opioid distribution, including the National Retail Pharmacies, is responsible for preventing diversion of prescription opioids into the illegal market by, among other things, monitoring and reporting suspicious activity."); ¶ 72 ("On the supply side, the crisis was fueled and sustained by those involved in the supply chain of opioids, including manufacturers and distributors, who failed to maintain effective controls over the distribution of prescription opioids, and who instead have actively sought to evade such controls); ¶ 29 ("The Supply Chain Defendants . . . including the Distributor Defendants and National Retail Pharmacies Defendants, saw the profit potential in opioid sales, participated in the conspiracy by ignoring their legal responsibilities, and flooded affected areas with opioids while knowing they were contributing to, but profiting from, widespread addiction and human misery.").

Plaintiffs point to the fact that "Plaintiffs plead *solely* Florida state law claims" as evidence that no federal question is presented in this case. Mot. to Remand, at 13-17. But Plaintiffs identify no state law that gives rise to the central duty that Plaintiffs claim the Supply Chain Defendants violated: the alleged duty to halt or "refuse to fill" suspicious orders of controlled substances. Compl. ¶ 70; *see also id*. at ¶ 553 ("In addition to reporting all suspicious orders, distributors must also stop shipment on any order which is flagged as suspicious . . . ."); *id*. at ¶ 562 ("Distributor Defendants knew they were required to monitor, detect, and halt suspicious orders.").

For each of Plaintiffs' claims, the purported duty to halt suspicious orders is the last (and necessary) link in the causal chain that would allow Plaintiffs to connect the conduct of Defendants like CVS to the harms alleged in the Complaint. Absent this link, simply complying with duties to monitor or report orders as suspicious would not have prevented the alleged over-distribution of opioids that Plaintiffs claim caused opioid-related injuries to them and their residents. There is no question, then, that the alleged duty to refuse to ship suspicious orders arises, if at all, out of the federal CSA and its implementing regulations. Specifically, the alleged duty arises out of DEA's interpretation of the CSA and its implementing regulations, under which federally registered distributors must "decline to ship" suspicious orders for controlled substances. *See Masters Pharm., Inc. v. U.S. Drug Enfor't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501, 2007 WL 1886484 (D.E.A. July 3, 2007), as the source of what it call DEA's "Shipping Requirement").

Plaintiffs nonetheless insist that the "claims and allegations contained within its [sic] Complaint are *all* founded upon state law . . . ." Mot. to Remand, at 10. But *none* of the Florida authorities that Plaintiff cites in its Complaint or motion to remand impose any duty to suspend shipments. Plaintiffs cite only three provisions of Florida law that they claim give rise to the duties to halt shipments of suspicious orders: Fla. Stat. § 499.0121(14), (15)(b) and (15)(c). Compl. ¶¶ 471-72. Subdivision 14 requires prescription drug wholesale distributors to "submit a report to the department of its receipts and distributions of controlled substances" that fall within certain schedules, § 499.0121(14), but the provision imposes no requirement to halt shipments of suspicious orders for controlled substances. Subdivision (15)(b) requires wholesale distributors to "establish internal policies and procedures for identifying suspicious orders and preventing suspicious transactions," § 499.0121(15), but does not expressly require a distributor to halt shipments of suspicious orders for controlled substances. Subdivision (15)(c) prohibits wholesale distributors from "distribut[ing] controlled substances to an entity if any criminal history record check for any person associated with that entity" reveals certain drug offenses, *id.*, but again imposes no requirement to report or halt shipments of suspicious orders. Plaintiffs also provide no state common law authority for any such affirmative duties.

In other words, alleged violations of federal law necessarily form the basis for Plaintiffs' claims. *See* 21 U.S.C. § 823(b), (e) (identifying the question whether a distributor has maintained "effective control against diversion" as one factor the Drug Enforcement Administration ("DEA") may consider in evaluating whether the

distributor should be licensed to operate); *id.* § 832 (imposing requirements to identify and report suspicious orders); *id.* § 842(c)(1)(B)(ii) (setting penalty for failure to comply with requirements related to suspicious orders or for failing to "maintain effective controls against diversion of opioids"); 21 C.F.R. § 1301.74(b) (requiring distributors of controlled substances to "design and operate a system" that identifies "suspicious orders of controlled substances" and to report such orders to the DEA). And federal regulations require distributors to develop a monitoring system to "provide effective controls and procedures to guard against theft and diversion of controlled substances." *See* 21 C.F.R. §§ 1301.71(a), 1301.74(b).

When there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," and the "duty would have to be drawn from federal law," a federal court has jurisdiction over that claim. *Louisiana Flood*, 850 F.3d at 723 (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy a standard of care established in federal statute); *see also Hughes* v. *Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (holding that plaintiff's state claims gave rise to federal question jurisdiction because resolution relied on duty contained in federal law). Accordingly, Plaintiffs here necessarily rely on violations of federal law as the basis for their claims.

This case is thus distinguishable from the cases Plaintiffs cites, *see* Mot. to Remand at 11-13, all of which expressly acknowledge that the claims (involving the laws of other states) could be decided without reference to the duties imposed by the CSA. And Plaintiffs ignore that numerous opioid cases involving similar

13

jurisdictional issues have been stayed pending transfer or transferred to the Opiate MDL to allow that court to decide jurisdictional issues in a common fashion.[7] The same result is warranted here.

Plaintiffs also cite several cases that were remanded by the Opiate MDL court. Mot. to Remand at 11-13. But none is on point. First, Plaintiffs' reliance on a *withdrawn* remand order by Judge Polster in a case brought by the Kentucky attorney general does not reflect a determination of the jurisdictional issues raised here. *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019) (attached as Exhibit 7); Mot. to Remand, at 12. Nor does it reflect a departure from the MDL court's expressed intent to decide remand motions and other jurisdictional issues collectively to ensure consistent rulings on substantially similar questions of law and fact. The now-withdrawn order rested in large part on grounds not present here. Judge Polster emphasized that he would have granted Kentucky's remand motion because the court had "already recognized that it has no jurisdiction over state cases filed by state attorneys general." *Id.* at *2; *see also id.* (citing only cases filed by state AGs).

Another order Plaintiffs cite involved an entirely different federal statute as

---

[7] *See, e.g.*, Order, *Takoma Reg'l Hosp.* v. *Purdue Pharma, L.P.*, No. 2:19-cv-157 (E.D. Tenn. Oct. 4, 2019); Order, *Cty. of Jim Hogg* v. *CVS Health Corp.*, No. 4:19-cv-02816 (S.D. Tex. Sept. 4, 2019); Order, *Cty. of Walker* v. *Abbott Labs.*, No. 4:19-cv-01767 (S.D. Tex. July 15, 2019); Order, *City of Costa Mesa et al* v. *Purdue Pharma L.P.*, No. 4:19-cv-02320 (N.D. Cal. June 10, 2019); Order, *Strafford Cty.* v. *Purdue Pharma L.P.*, No. 1:19-cv-00325 (D.N.H. June 3, 2019); Order, *City of Chesapeake, Va.* v. *Actavis, LLC*, No. 2:19-cv-00183 (E.D. Va. Apr. 24, 2019); Order, *Noble Cty.* v. *Cardinal Health, Inc.*, No. 2:18-cv-01379 (S.D. Ohio Jan. 24, 2019) (attached as Exhibit 2); Order, *Robinson Rancheria* v. *McKesson Corp.*, No. 3:18-cv-02525 (N.D. Cal. July 16, 2018).

7095803.1

grounds for removal, the Food & Drug Act. *In re Nat'l Prescription Opiate Litig.*, MDL No. 1:17-md-2804, 2018 WL 4019413 at *2 (N.D. Ohio Aug. 23, 2018) (rejecting argument that plaintiff's claims would usurp FDA labeling requirements because none of the marketing or messages at issue were approved by the FDA, but rather implicated solely state law). And, with respect to the *Jefferson/Franklin County* actions, Plaintiffs ignore that a Missouri state court judge expressly requested the MDL court remand those cases. The state court judge stated that, "for efficiency purposes [the state court judge] would like to be able to include the cases in the same geographic area." Order at 1, *In re Nat'l Prescription Opiate Litig.*, MDL No. 1:17-md-2804, ECF No. 1987 (N.D. Ohio July 24, 2019). Judge Polster noted that such "a request from a state court colleague warranted very serious consideration" and "decided to exercise [the court's] discretion" and remand those cases. *Id.* at 1, 3. Judge Polster also stated that he "will not entertain additional requests of this nature." *Id.* at 3. More significantly, Judge Polster retained jurisdiction over the same claims asserted by 18 of the 20 original plaintiffs in that action.

Although a plaintiff may be the master of its complaint, it may not circumvent proper federal jurisdiction simply by omitting necessarily federal questions from its complaint. *Hughes*, 478 F. App'x at 171 (quoting *Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)). These federal laws do not simply inform a state issue—they create the alleged duty underlying the action.

### B.   Federal Law Is Actually Disputed.

The parties "actually dispute" the federal question. In particular, the parties dispute whether Plaintiffs have a viable cause of action to sue under the CSA, and

whether certain defendants violated any alleged duties to monitor, detect, investigate, and report suspicious orders. This federal issue is the "central point of dispute," *Gunn*, 568 U.S. at 259, and therefore, the second *Grable* factor is met.

Plaintiffs argue that there is no actually-disputed federal question because Plaintiffs did not directly plead a federal issue—again missing the point. Plaintiffs cannot avoid an actually-disputed federal issue simply by omitting reference to the applicable law from its Complaint.[8] As in *Bender* v. *Jordan*, "this case presents a nearly pure issue of federal law." 623 F.3d 1128, 1130 (D.C. Cir. 2010). The great weight of authority favors staying opioid cases to await transfer to the Opiate MDL. *See* Exhibit 1 (listing more than 80 cases that have been removed on federal question grounds and either stayed pending transfer or transferred to the opiate MDL).

### C.    The Federal Issue Presented Is Substantial.

The federal issue presented is substantial, because the federal government has a strong interest in a nationally uniform approach to controlled substances. *See Gunn*, 568 U.S. at 260. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id*. This third factor is met because Congress recognized that the illegal uses of controlled substances "have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C.

---

[8] Plaintiffs themselves cite federal law numerous times in their Complaint. *E.g.,* Compl. ¶ 366, 700, 865, 873.

7095803.1

§ 801(2), (6). Indeed, this is one of the reasons that over 2,600 cases—raising identical issues—are currently pending in the Opiate MDL.[9] In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4572. The federal courts and the Opiate MDL court are best positioned to uniformly interpret these duties. Just as the federal government had a direct interest in vindicating its own administrative actions to recover delinquent taxes in *Grable*, so too here does the federal government have a direct interest in administering the regulatory system Congress put in place with respect to opioid medications.

In fact, the plaintiffs in the Opiate MDL filed a motion asking Judge Polster to rule that registrants under the federal CSA have a statutory and regulatory duty to monitor, investigate, and halt suspicious orders of opioids, under their theory that the federal CSA is the underlying source of authority for imposing any such duties on distributors of opioid medications.[10] *See* Summ. Sheet, Pls.' Mot. for Partial Summary

---

[9] Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72. The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(2), (6).

[10] Plaintiffs argue that "[t]he fact that there is no cause of action under the FCSA itself strongly militates against the notion that state law claims relating to its subject matter necessarily implicate substantial federal questions." Mot. to Remand, at 14. But Plaintiffs' attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a

Adjudication of Defs.' Duties Under the Controlled Substances Act, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio July 2, 2019), ECF No. 1799. And in its August 19, 2019 "Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing The Controlled Substances Act," the court considered the CSA and DEA's implementing regulations and the duties imposed by them, and then "examine[d] what the Defendants actually did compared to what the law requires." *See* Order at 5, *In Re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Aug. 19, 2019), ECF No. 2483. This puts beyond doubt that the federal issue is front and center and should be determined by the federal courts.

### D. The Federal Issue Is Capable of Resolution in Federal Court.

Finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors and manufacturers. Litigating this case in a state court would create the risk of the state court applying federal requirements in a manner in tension or in conflict with the way the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore properly exercised under Section 1331 to resolve "disputed issues of federal law" under the CSA.

---

federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck* v. *Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-2409-AA, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

7095803.1

Once again, Plaintiffs' claims are nearly identical to the over 2,600 cases currently pending in the Opiate MDL—including state common law claims. *See, e.g.*, *Cty. of Summit* v. *Purdue Pharma, L.P.*, No. 1:18-op-45090 (N.D. Ohio). It defies reason that Plaintiffs' case is not similarly capable of resolution in federal court.

## CONCLUSION

CVS respectfully requests that the Court postpone a decision on Plaintiffs' motion to remand. To the extent the Court considers Plaintiffs' Motion to Remand at this time, CVS respectfully requests that the Court deny Plaintiffs' motion and exercise subject matter jurisdiction over this matter.

DATED: December 30, 2019                    Respectfully submitted,

/s/ Nathan M. Berman
Nathan M. Berman
**ZUCKERMAN SPAEDER LLP**
101 East Kennedy Blvd, Suite 1200
Tampa, FL 33602
(813) 221-1010
nberman@zuckerman.com

*Attorneys for Defendants*
*CVS Health Corporation, CVS*
*Pharmacy, Inc.*
*and CVS Indiana, L.L.C.*

7095803.1

## <u>CERTIFICATE OF SERVICE</u>

I, Nathan M. Berman, hereby certify that the foregoing document will be served via the Court's ECF system to ECF registrants and/or U.S. Mail on December 30, 2019.

<u>/s/ Nathan M. Berman</u>

7095803.1